```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ANNIE HORACE,

                          Plaintiff,              06-CV-6252

             v.                                   **DECISION**
                                                  **and ORDER**
MICHAEL J. ASTRUE¹, Commissioner
of Social Security

                          Defendant.
_____
```

### INTRODUCTION

Plaintiff Annie Horace ("Plaintiff") brings this action on behalf of her son Andrew U. Trammell ("Andrew") pursuant to the Social Security Act § 1614(a)(3)(C), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") benefits. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Javier A. Arrastia denying her application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), on the grounds that the

---

1

Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on the grounds that the Commissioner's decision was erroneous. The Court finds that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law and therefore the Commissioner's motion for judgment on the pleadings is hereby granted.

## BACKGROUND

On May 10, 2004, Plaintiff, filed an application for SSI Benefits, on behalf of her son Andrew, who was 14-years old at that time. Plaintiff alleged that Andrew had a disability since December 1, 2002, due to attention deficit hyperactivity disorder ("ADHD"), asthma and a borderline IQ. Plaintiff's application was denied on September 17, 2004. Thereafter, Plaintiff and Andrew, requested and appeared, with an attorney in an administrative hearing before ALJ Javier A. Arrastia which took place on August 16, 2005.

In a decision dated December 1, 2005, the ALJ found that Andrew was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Board denied Plaintiff's request for review on April 21, 2006. On May 26, 2006, Plaintiff filed this action.

## **DISCUSSION**

### I.  **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts

are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of her claim which would entitle her to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.  **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ in his decision found that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ adhered to the Social Security Administration's 3-Step sequential evaluation analysis, for evaluating appointments for SSI benefits to a child. See 20 C.F.R. § 416.924.[2] Under Step 1 of the process, the ALJ found that Andrew had not engaged in substantial gainful activity during the period under consideration. (Transcript of Administrative Proceedings at pages 19, 24) (hereinafter "T.").

At Steps 2 and 3, the ALJ concluded that Andrew's impairments, such as, ADHD, asthma, and borderline intellectual functioning, which were severe within the meaning of the Regulations, were not severe enough to meet or equal, either singly or in combination,

---

[2]3-step analysis includes: (1) ALJ considers whether the child is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether child has a severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if the child suffers such impairment, third inquiry is whether, medically or functionally, the child has an impairment which is listed in regulations Appendix 1, and if so, the child will be considered disabled. See id.

any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. at 20, 24).

Based on the entire record, and particularly the medical evidence in the record, I find that the ALJ properly concluded that Andrew was not disabled within the meaning of the Social Security Act.

> A. <u>The ALJ properly concluded that none of Andrew's impairments met or equaled any listed impairments.</u>

The ALJ determined that Andrew's ADHD, asthma and borderline intellectual functioning did not meet or medically equal any listed impairments contained in the Regulations. (T. at 20,24). For Andrew's ADHD to have met or equaled the listing in the regulations, the medical evidence would have to show that Andrew had marked inattention, marked impulsiveness, and marked hyperactivity, for his age-group as listed in the "B" criteria. 20 C.F.R. Part 404, Subpart P, Appendix 1,§ 112.11. However, Andrew's inattention, impulsiveness, and hyperactivity were controlled when he was given appropriate medication and they did not result in any marked impairments. (T. at 20).

On June 4, 2003, Dr. Ransom, Andrew's evaluating pediatrician, found that Andrew was able to maintain appropriate social behavior, learn in accordance with cognitive functioning, and interact adequately with peers and with adults. (T. at 230). Dr. Ransom concluded that Andrew's ADHD was in remission while on medication. Subsequently, on September 1, 2004, Dr. Ransom found that there

were no signs of impulsivity or speed in responding. (T. at 257). Dr. Ransom also found that Andrew's attention and concentration were adequate. (T. at 257).

Additionally, on June 2, 2004, Ms. Lerner, Andrew's evaluating psychologist, found that Andrew was on-task at all times during the testing and did not have any attention difficulties. (T. at 183). Further, Ms. Lerner found that Andrew's behavior was markedly different than what she had observed a year ago when Andrew had barely cooperated and had great difficulty attending. (T. at 183). Ms. Lerner opined that Andrew's change in behavior was due to change in his ADHD medication. (T. at 183).

The medical evidence in the record shows that Andrew was quiet, calm, focused, attentive and did not have any problems related to his ADHD when he took his medication. Thus, I find that the ALJ properly concluded that Andrew's ADHD did not meet or equal any of the listed impairments.

With respect to Andrew's asthma, I find that the record supports a finding that, Andrew's asthma did not meet or equal any listed impairment contained in the regulations. In order, for Andrew's asthma to have met or equaled the listed impairments contained in the regulations, the medical evidence in the record would have to demonstrate that Andrew had asthmatic attacks despite being prescribed treatment, at least six times a year. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 103.03B. Andrew did not have any

attacks requiring hospitalization, growth impairment, low FEV levels, or persistent inflation or low-grade wheezing. (T. at 20).

Further, Drs. Meyer and Harar, Andrew's evaluating pediatricians, opined that none of Andrew's impairments met or medically equaled any of the listed impairments contained in the regulations. (T. at 232-37, 260-65).

For Andrew's borderline intellectual functioning to have met or equaled any listed impairment for mental retardation, the medical evidence in the record would have to demonstrate that Andrew had significantly sub-average general intellectual functioning with deficits in adaptive functioning. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05.

On September 1, 2004, Dr. Ransom found that Andrew had an IQ score of 71, a Verbal IQ score of 67, Perceptual functioning 59, Working Memory 68, and Processing Speed 94. (T. at 257). Dr. Ransom opined that Andrew had adequate attention and concentration, readily recalled, understood and responded to instructions. (T. at 255-59). Dr. Ransom also found that Andrew was adequately able to maintain appropriate social behavior, learn in accordance with cognitive functioning, and interact adequately with peers and adults. (T. at 255-59).

On May 26, 2005, Andrew's teacher stated that when he took his prescribed medication, Andrew was able to work independently, complete assignments in a timely manner, remain on task, and

respond appropriately to changes in routine. (T. at 20). Andrew received A's and B's, had a 3.00 grade point average, made the honor roll, and was named student of the week. (T. at 20, 315-19).

After a complete review of the evidence contained in the record, I find that the ALJ properly relied upon medical evidence to find that Andrew's ADHD, asthma and borderline intellectual functioning did not meet or equal any of the listed impairments contained in the regulations.

> B.  The ALJ properly concluded that Andrew's impairments were not functionally equivalent to any listed impairment.

The Social Security regulations provide that if a child's impairment or combination of impairments does not meet or equal any impairment contained in the Regulations, the ALJ will access the functional limitations caused by the child's impairments. 20 C.F.R. § 416.926a(a). Additionally, if the functional limitation caused by the child's impairment is the same as the disabling functional limitation caused by a listed impairment, the ALJ will find that the impairment is functionally equivalent in severity to the listed impairment. Id.

The ALJ evaluated Andrew's impairments and determined that none of Andrew's impairments were functionally equivalent to any of the listed impairments. (T. at 21-23, 24). In making that determination, the ALJ considered how Andrew performed in his activities in six domains: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with

others; 4) moving about and manipulating objects; 5) caring for self; and 6) health and physical well-being. (T. at 21-23); see 20 C.F.R. § 416.926a(b)(1).

### 1. Acquiring and using information

The ALJ determined that Andrew had less than a marked limitation for acquiring and using information. (T. at 21-22). I find that the ALJ's determination is correct and is supported by substantial medical evidence.

On June 4, 2003, Dr. Ransom found that Andrew's Full Scale IQ was 46, Verbal IQ score was 46 and Performance IQ score was 50. (T. at 229). However, on September 1, 2004, Dr. Ransom found that Andrew had an IQ score of 71, a Verbal IQ score of 67, Perceptual functioning 59, Working Memory 68, and Processing Speed 94. (T. at 257). Additionally, Andrew's 2003 IQ score was inconsistent with his reading score of 88 and his math score of 88. (T. at 22). Further, the record appropriately indicates that Andrew is able to stay on task and complete his schoolwork when he is compliant with his medication. (T. at 22).

### 2. Attending and completing tasks

The medical evidence in the record indicates that Andrew made a significant improvement in school after he consistently complied with taking his medication. (T. at 322). Additionally, Andrew also became very involved in playing soccer and increased his overall effort in his academics. (T. at 322).

Ms. Markham, Andrew's teacher, also noted that when Andrew was compliant with his medication, he worked well independently and was able to complete all of his assignments in a timely manner. (T. at 315).

I find that the record supports the ALJ's finding that Andrew has less than a marked limitation under the domain of attending and completing tasks because Andrew's ADHD is responding to his medication and Andrew is functioning well in school.

### 3. Interacting and relating with others

The ALJ correctly noted that Andrew had no significant limitations in interacting and relating with others. (T. at 22). Ms. Markham stated that Andrew gets along well with peers and adults. (T. at 315). Additionally, according to Andrew's annual review dated October 18, 2005, Andrew worked well in groups with others with close adult proximity in the classroom. (T. at 325).

Dr. Ransom also found that Andrew was able to maintain appropriate social behavior, learn in accordance with cognitive functioning, and interact adequately with peers and with adults. (T. at 230).

### 4. Moving about and manipulating objects

The moving and manipulating objects domain consists of how well a child's gross motor skills (body movement) and fine motor skills (hand and finger movements) have developed. The ALJ correctly found that Andrew has no significant limitations and his

motor skills were within normal range. Dr. Ransom also stated that Andrew's motor skills and posture were normal. (T. at 229). Additionally, Ms. Markham stated that Andrew had no medical concerns and his fine and gross motor skills were within normal limits. (T. at 315).

The record is devoid of medical evidence in support of problems that Andrew might have experienced with his motor skills.

### 5. Caring for self

The ALJ concluded that Andrew had no significant limitations under the domain of self-care. (T. at 23). Dr. Ransom observed that Andrew's manner of dress was neat, casual and appropriate with adequate hygiene and grooming. (T. at 229). Ms. Markham also stated that Andrew exhibited age appropriate hygiene and self-care. (T. at 315).

The ALJ properly concluded that Andrew had no limitations in caring for himself.

### 6. Health and physical well-being

Under the self-care domain the ALJ found that Andrew was able to take care of himself. Similarly, the ALJ found that under the domain of health and physical well-being, Andrew had no significant limitations and could perform age appropriate activities. (T. at 23).

Additionally, Andrew's asthma did not cause any hospitalization or frequent school absences. (T. at 23). Ms.

Markham opined that Andrew had normal motor skills, exhibited age appropriate hygiene and had no medical concerns. (T. at 315). Ms. Markham also held that Andrew's communication skills, both expressive and receptive skills were within normal limits. (T. at 315).

The state agency physicians Drs. Meyer and Harar opined that none of Andrew's impairments functionally equaled any listed impairment contained in the regulations. Therefore, based on the entire record, I find that Andrew did not have any extreme or marked limitations in any of the domains of functioning. The ALJ was correct in concluding that Andrew's impairments were not functionally equivalent to any listed impairment contained in the regulations.

## CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         July 3, 2007